Filed
File Date: 5/23/2022 10:59 AM
Grafton Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

GRAFTON, SS                                                              SUPERIOR COURT

Case No._____215-2022-CV-00129_____

James V. Haxby, Ph.D.

Plaintiff-Respondent,

-v-

Trustees of Dartmouth College

Defendant-Petitioner.

---

**PETITION FOR REMOVAL TO SUPERIOR COURT AND REQUEST FOR JURY TRIAL PURSUANT TO RSA 354-A:21-a**

---

Defendant-Petitioner Trustees of Dartmouth College ("Dartmouth" or "Defendant"), by and through the undersigned counsel, hereby removes the Human Rights Commission Charge of Discrimination filed against it by Plaintiff-Respondent James V. Haxby, Ph.D. ("Plaintiff") to this Court for pretrial proceedings and a jury trial pursuant to RSA 354-A:21-a.

1.      Plaintiff filed a Charge of Discrimination against Dartmouth with the New Hampshire Commission for Human Rights ("Commission") on or about November 28, 2018, together with a First Supplement to his Charge of Discrimination (dated November 5, 2019). Plaintiff alleged, *inter alia*, that Dartmouth's decision to terminate his endowed professorship amounted to retaliation on the basis of his association with his wife and his support for her gender discrimination complaints against Dartmouth, in violation of RSA 354-A and Title VII of the Civil Rights Act of 1964. A copy of the Charge of Discrimination together with its

supplement thereto, is attached as **Exhibit A**. Dartmouth properly and timely raised numerous defenses below, and denies all claims of unlawful discrimination and retaliation made in those documents.

2.      The Investigating Commission issued a finding of "probable cause" on or about May 18, 2022. This preliminary finding is not a determination that discrimination or retaliation occurred; rather, it represents a determination by the Investigating Commissioner that a reasonable basis existed to support bringing additional proceedings in the nature of a public hearing before the full Human Rights Commission. *See* RSA 354-A:21-a, I; BLACK'S LAW DICT. 1454 (11th ed. 2019).

3.      No public hearing has been commenced.

4.      Dartmouth hereby exercises its right to have pretrial proceedings and a jury trial in this Court in accordance with RSA 354:21-a, I, and has provided or will provide appropriate statutory notice to the Commission of the filing of this matter pursuant to RSA 354-a:21, II.

5.      A copy of this Petition has been provided to Plaintiff through his counsel and to the Commission.

WHEREFORE, Dartmouth requests that this Honorable Court:

A.      Schedule this matter for pretrial proceedings and a jury trial in accordance with RSA 354-A:21-a; and

B.      Grant it such other and further relief as this Court deems just and equitable

Respectfully submitted,

THE TRUSTEES OF DARTMOUTH COLLEGE

By its attorneys,

DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION

Date: May 20, 2022   By:  */s/ Pierre A. Chabot* _____
          Pierre A. Chabot, Esquire (Bar # 17606)
          111 Amherst Street
          Manchester, NH 03101
          (603) 669-1000
          pchabot@devinemillimet.com

## CERTIFICATE OF SERVICE

   I hereby certify that I have served a copy of this Petition for Removal to Superior Court and Request for Jury Trial Pursuant to RSA 354-A:21-a upon Attorneys Lauren Simon Irwin and Alan Kabat, counsel for Plaintiff in this matter, by sending or causing the same to be sent by email to each of them.

        By: */s/ Pierre A. Chabot* _____
          Pierre A. Chabot

# Exhibit A

Charge of Discrimination and Supplement to Charge

*James V. Haxby v. Trustees of Dartmouth College*

No. _____

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☒ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

| New Hampshire Commission for Human Rights | | and EEOC |
|---|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**Dr. James V. Haxby** | Home Phone *(Incl. Area Code)*<br>**(609) 462-5568** | Date of Birth<br>**May 20, 1951** |
|---|---|---|

| Street Address<br>**3 North Balch Street, Hanover, New Hampshire 03755-1502** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**Dartmouth College** | No. Employees, Members<br>**3,000** | Phone No. *(Include Area Code)*<br>**(603) 646-3411** |
|---|---|---|

| Street Address<br>**Dartmouth College, Office of Human Resources, 7 Lebanon Street, Suite 203, Hanover, New Hampshire 03755** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☐ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | | ☐ GENETIC INFORMATION |
| | ☒ OTHER *(Specify)*   **RSA 354-A** | | | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06/04/18**     Latest **09/12/18**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Please see Attachment A.

Michael Hemingway
Notary Public, State of New Hampshire
My Commission Expires July 11, 2023

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |

28 Nov 2018

*Date*         *Charging Party Signature*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

November, 28   2018

**Attachment A**

1.      I am a tenured Professor in Dartmouth College's Department of Psychological and Brain Sciences (PBS). I was hired in 2008 as the Evans Family Distinguished Professor, and also appointed as Director of the Center for Cognitive Neuroscience and Director of the Dartmouth Brain Imaging Center. I have authored or co-authored about 200 peer-reviewed publications over the past 40 years, maintain an active research laboratory, and teach both undergraduate and graduate students. I am the most highly-cited scientist on Dartmouth's faculty; only one other Dartmouth professor (in the business school) has more citations. Prior to joining Dartmouth's faculty, I held increasingly responsible positions at the National Institutes of Health (NIH) and Princeton University. I also previously held a joint appointment at the Center for Mind/Brain Sciences, Faculty of Cognitive Science, University of Trento (Rovereto, Italy).

2.      When Dartmouth hired me, the job offer letter from the Dean stated that "I am pleased to offer you an appointment as Professor of Psychological and Brain Sciences, with tenure, and Director of the Brain Imaging Center and of the Center for Cognitive Neuroscience at Dartmouth College, effective July 1, 2007. Your professorship will be endowed, and we will provide you with a named chair."

3.      The job offer letter also explained that in addition to my compensation and benefits as a tenured professor holding an endowed chair, I would also receive additional resources for the two directorships. As the Director of the Center for Cognitive Neuroscience, the following resources would be provided: (1) "up to $80,000 budgeted annually for workshops, colloquia, and retreats;" (2) "up to $75,000 available annually for postdoctoral students and visiting scholars;" (3) "two Dartmouth Fellowships (dfs) to the pool of Psychological and Brain Sciences dfs in order to support two additional graduate students;" and (4) "support for a half-time administrative assistant." I continue to hold this directorship.

4.      As the Director for the Dartmouth Brain Imaging Center, the following resources would be provided: (1) "an operations manager;" (2) "a technical support person to be shared with the medical school;" (3) "a half-time administrative assistant;" and (4) "a budget of up to $60,000 per year for supplies and computer and equipment upgrades." I also continue to hold this directorship.

5.      I am married to Dr. Maria Ida Gobbini, who is an Associate Professor in PBS.

6.      On January 14, 2013, only a half-year after Dartmouth hired Dr. Gobbini, Dr.

David Bucci, who was then the Chair of the Graduate Student Committee and is now the PBS Chair, held a mandatory meeting for all PBS graduate students. At this meeting, he displayed a slide that he had created by photoshopping Dr. Gobbini's face onto the body of a woman in a bikini holding an alcoholic beverage. The figure with her face was standing near a swimming pool with my own face photoshopped onto a male body in a speedo. This sexist incident was deeply humiliating to both of us. Even though Dr. Gobbini complained about this discriminatory treatment to Dr. Jay Hull, who was then the PBS Chair and is now the Associate Dean, no corrective action was taken, and both Dr. Bucci and Dr. Hull subsequently retaliated against her in the evaluation and tenure process.

7.     When Dr. Bucci prepared the performance evaluation for Dr. Gobbini in Academic Year 2016-17 (the final evaluation in her tenure file), he improperly fixated on her relationship (association) with me. This evidenced his view that Dr. Gobbini was only at Dartmouth because she was married to me, not because she is an independently qualified researcher and teacher. In fact, my research, teaching, and service at Dartmouth is independent from Dr. Gobbini's research. Dr. Peter Tse, a Full Professor in PBS, has also fixated on this relationship. For example, in the fall of 2016, he opposed Dr. Gobbini's serving on a search committee for a cognitive neuroscience position, falsely claiming that she could not provide an independent opinion because she and I are married. Dr. Bucci, as the PBS Chair, subsequently wrote to me that "the perception is that having Ida [Gobbini] on this committee allows you to exert influence," again viewing Dr. Gobbini as nothing more than an annex to me as her spouse.

8.     As further context, PBS has a long history of gender discrimination, including a recent high-profile case involving sexual misconduct by three senior male faculty members, each of whom was forced to leave Dartmouth earlier this year. On November 15, 2018, seven current and former PBS students filed a gender discrimination and harassment lawsuit against Dartmouth, alleging that the three senior male faculty members had assaulted them or otherwise created a hostile work environment, and that Dartmouth failed to take appropriate remedial action in response to numerous complaints. In fact, since at least 2002, there have been several formal gender discrimination complaints made to administrators in PBS and to the Office of the Dean of Faculty, which did not lead to any effective remedial measures or efforts to protect the careers of female students and faculty.

9.     In the past eighteen years, seven women (including Dr. Gobbini) have been hired

as tenure-track faculty in PBS. Of these seven women, six either left or were denied tenure (one of these subsequently received tenure after the department's negative vote was overturned on appeal, but she chose to accept an offer elsewhere because of Dartmouth's treatment of her). In contrast, at least five men have obtained tenure in PBS during the same time period, including Dr. Bucci and Dr. Tse (and only two men were denied tenure).

10.     Dr. Gobbini applied for tenure during the 2017-18 Academic Year. I was recused from any involvement with her tenure application. In early April 2018, she learned that the PBS department had voted against her tenure application. She complained to Associate Dean Hull, both in person and in writing, on April 20 and 21, 2018, that the departmental vote was the result of gender discrimination. However, both Associate Dean Hull and Dean Smith concurred with the PBS departmental vote. Dean Smith told Dr. Gobbini on May 13, 2018, that she would be denied tenure, even though her record of scholarship and teaching was comparable to or significantly greater than other, male members of PBS who have obtained tenure during the past decade.

11.     After Dartmouth formally denied tenure to Dr. Gobbini, she contacted Dr. Evelyn Ellis (Vice President for Institutional Diversity and Equity) to complain that the tenure denial arose from gender discrimination. As a result of her discussions with Dr. Ellis, Dr. Gobbini filed an internal appeal of her tenure denial with Dartmouth, which alleged that the tenure denial resulted from gender discrimination.

12.     On June 4, 2018, less than two months after Dr. Gobbini put Dartmouth on notice that she believed the tenure denial was the result of gender discrimination and would be filing an internal gender discrimination complaint, Dr. Elizabeth Smith, the Dean of Faculty, wrote to me to tell me that my named and endowed chair (Evans Family Distinguished Professor) would terminate at the end of July 2018, and that Dartmouth had no plans to provide me with a new endowed professorship. An endowed professorship is not only significantly more prestigious than a regular professorship, but also comes with higher compensation and benefits.

13.     I met with Dean Smith on September 12, 2018 to protest this removal of my endowed professorship, to no avail. During that meeting, she also told me that an "inquiry" (investigation) into my former joint appointment at the University of Trento that had been resolved nearly two years ago (in December 2016) was now considered to be unresolved, implying that the investigation would be re-opened. That investigation in 2016 was very time-

consuming and revealed that the allegations arose from professional jealousy which Dean Hull used to initiate the investigation, and not from any actual misconduct on my part.  Even though I was cleared in December 2016, Dean Hull told me in June 2017 that I should resign as Director of the Center for Cognitive Neuroscience.  I believe that Dartmouth will further retaliate against me by using this spurious investigation as a basis to remove me from the two Director positions that I hold, or take other adverse employment actions, and that Dartmouth is doing so because my wife, Dr. Gobbini, has persisted with her gender discrimination appeal and with filing her own charge of discrimination with the EEOC and the New Hampshire Commission for Human Rights.

14.     For the reasons stated above, I believe that Dartmouth College, when it terminated my endowed professorship, has retaliated against me on the basis of my association with Dr. Gobbini and my support for her gender discrimination complaints, in violation of the New Hampshire Law Against Discrimination and Title VII of the Civil Rights Act of 1964.  I would like to cross-file my charge with the U.S. Equal Employment Opportunity Commission.


_____          ⊃8 Nov 2018
James V. Haxby                                            November 28, 2018


Michael Hemingway
Notary Public, State of New Hampshire
My Commission Expires July 11, 2023

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☑ FEPA  ☒ EEOC | |

| New Hampshire Commission for Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Dr. James V. Haxby | (609) 462-5568 | May 20, 1951 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3 North Balch Street, Hanover, New Hampshire 03755-1502 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Dartmouth College | 3,000 | (603) 646-3411 |

| Street Address | City, State and ZIP Code |
|---|---|
| Dartmouth College, Office of Human Resources, 7 Lebanon Street, Suite 203, Hanover, New Hampshire 03755 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☒ OTHER *(Specify)*   **RSA 354-A**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06/04/18**   Latest **10/23/19**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*
Please see Attachment A.

Exp. 10/16/21

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| Nov 5, 2019     *Date*          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*  Nov 5 2019 |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☐ EEOC | |

| New Hampshire Commission for Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

*Exp. 11/16/21*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Nov 5, 2019 _____ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date*        *Charging Party Signature* | Nov 5 2019 |

**SUPPLEMENT TO ATTACHMENT A – Jim Haxby, Ph.D.**

**Paragraphs 15 through 21 are hereby added to Attachment A as follows:**

15.     On October 20, 2019, Dr. Peter Tse, a tenured faculty member in Dartmouth's Department of Psychological and Brain Sciences ("PBS"), who also served on the tenure review committee for Dr. Ida Gobbini (Dr. Haxby's wife), sent an email to the entire junior faculty in PBS that specifically blamed Drs. Haxby and Gobbini for the recent suicide of Dr. David Bucci, former PBS Chair.

16.     Dr. Bucci committed suicide during the week of October 15, 2019, after a life-long battle with severe depression. Drs. Haxby and Gobbini previously named Dr. Bucci in their NHCHR/EEOC charges as having made sexist remarks about Dr. Gobbini in the workplace, and for having failed to take action when Dr. Gobbini complained about gender discrimination in the workplace. Dr. Bucci was further named in a recent lawsuit initiated by PBS graduate students – *Rapuano v. Trustees of Dartmouth College* – for having failed to take action when the students complained to him (in his capacity as then-Director of Graduate Studies and then-PBS Chair) about sexual harassment and discrimination by several faculty members in PBS.

17.     Following the news of Dr. Bucci's suicide, Dr. Tse emailed the entire PBS junior faculty, attaching Dr. Haxby's NHCHR/EEOC charge, Dr. Gobbini's NHCHR/EEOC charge, and the purportedly "confidential" report of Dartmouth's internal investigation of Dr. Gobbini's allegations of gender discrimination and retaliation. Dr. Tse's email stated the following:

> Because of Dave's [Bucci's] suicide, and the importance of having an open, even if painful discussion about how to move forward as a dept., I feel it important that the junior faculty now know about accusations made against Dave that he took very very hard, and that made him extremely angry. False accusations from the plaintiffs [in *Rapuano*], followed by these second false accusations, were contributing factors to his mental breakdown, in my view.

18.     By "these second false accusations," Dr. Tse was clearly referring to Dr. Haxby's and Dr. Gobbini's legal claims involving Dr. Bucci, given the attachments to his email. These statements are defamatory, and constitute further retaliation against Dr. Gobbini for bringing legal claims against Dartmouth based on its discriminatory and retaliatory denial of her tenure, against Dr. Haxby for opposing this discrimination and retaliation, and against both Drs. Haxby and Gobbini for filing administrative charges against Dartmouth with the NCHRC and the EEOC.

19.     Dr. Tse's retaliatory statements have seriously damaged Dr. Haxby's reputation within Dartmouth, and, in particular, among the junior faculty in PBS, who are likely to believe Dr. Tse's accusation that Drs. Haxby and Gobbini are responsible for Dr. Bucci's suicide.  Dr. Haxby serves as the Director of the Center for Cognitive Neuroscience and the Director of the Dartmouth Brain Imaging Center ("DBIC").  The junior faculty in PBS are dependent on the DBIC for their research using functional brain imaging.  Dr. Tse's email to the junior faculty undermines Dr. Haxby's critical working relationship with the junior faculty.

20.     On October 21, 2019, counsel for Drs. Haxby and Gobbini wrote to Dartmouth and demanded that Dartmouth immediately repudiate Dr. Tse's statements, and further retract them (or order that Dr. Tse retract them), with notification to the entire faculty of PBS, and anyone else to whom Dr. Tse or others may have made or republished these statements.

21.     In response, by letter dated October 23, 2019, Dartmouth's counsel refused to repudiate or retract the retaliatory and defamatory statements.  Instead, Dartmouth's counsel wrongfully accused Drs. Haxby and Gobbini of using Dr. Bucci's suicide to "enhance" their "litigation posture" against Dartmouth.  To the contrary, it is Dr. Tse – and now, Dartmouth – who used the news of Dr. Bucci's tragic passing as an opportunity to defame Drs. Haxby and Gobbini, and attack their litigation positions against Dartmouth, in retaliation for their engaging in protected activity against the College.


I declare, under penalty of perjury, this _5_ day of ~~October~~ November, 2019, that the foregoing is true and accurate.




Jim Haxby, Ph.D.

Exp. 11/16/21